[Civ. No. 145.   Third Appellate District.—April 14, 1906.]

## JAMES WARD et al., Respondents, v. A. B. EASTWOOD et al., Appellants.

ACTION FOR SERVICES—MINING OF QUARTZ ROCK READY FOR HOISTING —CONTRACT—DEFENSE—IMPOSSIBILITY OF HOISTING—"ACT OF GOD."—In an action for services rendered by plaintiffs under an agreement proved and found that plaintiffs were to mine quartz rock for defendants, and to place it in the chutes ready for hoisting, at a fixed rate per ton, and that defendants were to hoist the same, to measure it at two buckets to the ton, and to pay in a succeeding month for all ore mined in the preceding month, and to keep the mine free from water, it is no defense to a recovery by plaintiffs for ore mined and left in the chutes unhoisted that the hoisting of the same by defendants was rendered impossible by heavy rains, and that the mine was flooded "by the act of God."

ID.—PERFORMANCE OF CONTRACT BY PLAINTIFFS—TIME OF PAYMENT— MEANS OF MEASUREMENT.—Where the plaintiffs had nothing to do with the hoisting of the ore, and the contract was performed on their part when they placed the ore in the chutes, the time and manner of payment, and the means adopted to measure the ore when hoisting it in buckets, did not affect the value of plaintiffs' services to the defendant, or plaintiffs' right to compensation therefor at the contract price for all ore mined and made ready for hoisting, though left unhoisted by defendants for any reason.

ID.—CAUSE OF FAILURE TO HOIST—IMMATERIAL OMISSION IN FINDING. It is immaterial whether the failure of defendants to hoist the ore was caused by their negligence before the mine was flooded or

was prevented by an unavoidable cause rendering the hoisting impossible, as alleged in the answer. It was not necessary for the court to find specifically upon the issue as to the alleged unavoidable cause which prevented defendants from hoisting the ore, where the court found upon other issues which were determinative of the judgment, and a finding in favor of appellant upon that issue would not justify a contrary judgment.

ID.—MEANS OF MEASUREMENT RENDERED UNAVAILABLE—PROOF OF QUANTITY OF ORE MINED.—Where the means of measurement agreed upon were rendered unavailable by reason of the ore mined being under water, plaintiffs had the right to show by other means the quantity of ore mined and left in the chutes unhoisted.

ID.—SUPPORT OF FINDING AS TO QUANTITY—CONFLICTING EVIDENCE.— Where the testimony as to the quantity of the ore remaining in the chutes was conflicting, and the court accepted the testimony of the plaintiffs, its finding for the plaintiffs on that subject cannot be disturbed.

ID.—PARTNERSHIP OF PLAINTIFFS IN NET PROCEEDS—AGREEMENT FOR SEPARATE PAYMENTS—MISJOINDER NOT PLEADED.—Where there was evidence that all of the plaintiffs were equal partners in the net proceeds of their mining, each man to be paid according to the time he worked, less his share of expenses, the fact that a statement was handed the defendants showing the amount due to each, and that by agreement between them each was to be paid separately, is not material, where there was no demurrer for misjoinder of the plaintiffs, and all of them had been recognized by the defendants as working under the contract alleged in the complaint.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

Tabor & Tabor, for Appellants.

Lardner & Barnes, and W. H. Slade, for Respondents.

CHIPMAN, P. J.—Action to recover on contract for mining two hundred tons of ore and quartz rock in defendants' mine. The cause was tried by the court, sitting without a jury, and plaintiffs had judgment for $487, being the amount prayed for, less $13 for supplies furnished plaintiffs by de-

fendants. Defendants appeal from the judgment and from the order denying their motion for a new trial.

The contract was oral, and, as was alleged in the complaint, was that plaintiffs agreed to work for defendants, as miners, in the Hathaway mine, Nevada county, "in breaking down and abstracting ore and quartz rock in said mine, ready for hoisting for the agreed price of two and 50-100 dollars per ton; and said defendants agreed, on their part, to keep the said mine free from water so that plaintiffs could perform said labor, and to pay plaintiffs said sum of two and 50-100 dollars for each ton of rock and ore so extracted, and to pay said $2.50 per ton as fast as said rock was broken down and ready for hoisting." It was alleged "that plaintiffs began work on January 2, 1902, and continued work under said contract down to the sixth day of March, 1902, when they were driven out of said mine by water, the defendants having failed to keep said mine free from water." It is alleged that plaintiffs broke down and extracted ore in said time to the extent of six hundred and thirty-nine and one-half tons, for which there became due to plaintiffs the sum of $1,598.75, no part of which has been paid except $1,098.75.

Defendants answered, denying the allegations of the complaint and alleged that plaintiffs agreed to break down and mine out quartz rock at a certain level "and place the same in the chutes at said level at the agreed price of $1.25 per car"; that it was agreed that the ore thus mined in each calendar month should be paid for on or about the tenth day of the succeeding calendar month, "provided that the same had then been hoisted and milled, and not otherwise." Defendants averred that they did not employ any of plaintiffs other than Emil Anderson and Henry Johnson, and that if plaintiffs other than these two were employed it was not by defendants, and that defendants had, prior to the commencement of the action, paid plaintiffs last above named in full for all ore broken down and placed in the chutes, "which had been hoisted and milled or which it was possible to hoist up from said level in said cars, or to measure and mill."

Defendants averred that excessive rains during the months of January, February, and March, 1902, caused the six hundred foot level, on which plaintiffs were working, to fill with water, to such an extent as to render it impossible to hoist

cars therefrom, "and that no foresight or care on the part of the defendants could have prevented the same," alleging that said level was flooded "by the act of God."

The court found the allegations of the complaint to be true and found against defendants as to their alleged understanding of the contract; and the court found that the ore was to be paid for when broken down and ready in the chutes to be hoisted; "that whether or not the mine became filled with water is no excuse for defendants in not paying the contract price for the ore delivered in the chutes," and that it was no excuse for not paying plaintiffs the contract price for ore delivered in the chutes, that defendants "did everything in their power to keep the water out of the mine to the end that they might hoist the ore."

Defendants challenge the sufficiency of the evidence to support the findings; that defendants contracted with all the plaintiffs; that the contract was that defendants should pay for ore in the chutes, and not, as claimed by defendants, after it was hoisted, crushed and milled; that the ore unpaid for which was broken down and placed in the chutes ready for delivery was two hundred tons. It is also claimed that the findings as to defendants' special defense arising out of the alleged excessive rainfall, and the flooding of the mine by an act of God, are not findings of fact but are conclusions of law and are contrary to the facts and against the law. It is further complained that the court erred in not finding specifically upon the facts set up by defendants as a special defense —i. e., the facts relating to the excessive rainfall as a reason for not keeping the mine free from water and for not hoisting the ore so that it could be milled and measured.

There is substantial agreement in the testimony of plaintiffs, all of whom were witnesses, that the understanding was that plaintiffs were to break the rock and place it in the chutes ready to be hoisted; they were to furnish their own material, powder, fuse, and candles, and defendants were to furnish the timber, keep the mine free from water and to pay plaintiffs $2.50 per tone of ore. It was understood by plaintiffs that they were to be paid for the quartz produced during any calendar month, according to the prevailing custom, between the 10th and 15th of the succeeding calendar month. The amount of ore that was mined was ascertained by hoist-

ing it in buckets, counting two buckets as a ton. Thus far there is no substantial conflict as to the agreement. Defendant Knoff, however, testified: "The ore was to be paid for after we hoisted it and cleaned up the mill." The testimony of plaintiffs was that they did not so understand the contract. It appears that plaintiffs were paid in February for the ore mined and hoisted in January, and no question then arose as to ore not hoisted. In March payment was made only for ore hoisted in February, and as the level on which plaintiffs had been working was under water and they had been compelled to quit work, they demanded payment for the remaining unhoisted ore, some of which was mined in February and some in March. This was refused, and on March 22d they commenced the action.

We do not think because payment was to be made on the 10th of the month for the ore hoisted the preceding month, the quantity of which was to be ascertained from the number of tons hoisted, that it would follow that plaintiffs were to receive no pay unless the ore was hoisted. They had nothing to do with that part of the work and had no control over it. They consented to receive pay in the manner testified to by them, but, according to their testimony, they never agreed that they should receive no pay unless the ore was hoisted, crushed and milled, as contended by plaintiffs. Plaintiffs' contract was performed on their part when they placed the ore in the chutes; the time and manner of payment and the means adopted to measure the ore did not affect the value of plaintiffs' services to defendants or plaintiffs' right to compensation therefor at the contract price.

Nor can we see that defendants are excused from paying for the ore that was mined and unhoisted because defendants were unable with their facilities to keep the water out of the mine. The only means adopted was by a hoisting bucket, and there is evidence tending to show that even this inadequate means was not used to the best advantage; and there was also evidence tending to show that much more ore could have been hoisted than was taken out before the water rose to the six hundred foot level where plaintiffs were working. But, aside from these considerations, defendants were no more excused by the happening of unusual rains than they would have been had fire destroyed their mill and hoisting works, or

than if an earthquake had caused the shaft to collapse and had made further hoisting impossible. Unless plaintiffs took these risks, which is contrary to the evidence, agreeing that they were to be paid only for ore to be hoisted and milled, the inability of defendants to avail themselves of plaintiffs' labor should not deprive plaintiffs of the compensation justly due them.

It was not necessary for the court to find specifically upon the issue as to the alleged unavoidable cause which prevented defendants from hoisting the ore. Holding, as we do, that plaintiffs were entitled to pay for the ore delivered in the chutes, it was immaterial what cause prevented defendants from hoisting and milling it. If defendants, through their own fault or neglect, failed to hoist the ore, it could not for a moment be claimed that they would be excused from paying for it. If they were prevented from hoisting the ore through some unavoidable cause, which did not destroy the ore, but left it where plaintiffs had agreed to place it, the rights of plaintiffs would be uneffected, inasmuch as they had fully complied with their part of the contract, and hence it would be immaterial what the cause might be. Immaterial findings which do not affect the correctness of the judgment, though erroneous, are not ground for reversal. (*Tuohy* v. *Woods,* 122 Cal. 665, [52 Pac. 683].) Failure to find upon all material issues is not prejudicial error where the court finds upon an issue which is determinative of the judgment, and where findings in favor of appellant upon other issues would not justify a contrary judgment. (*Windhaus* v. *Bootz,* 92 Cal. 617, [28 Pac. 557].)

It is true that there was an understanding that the ore was to be measured by the hoisting bucket—two buckets to the ton—and payment was to be made upon this measurement at the time agreed upon. But as this means of measurement was no longer available, the ore being under water, plaintiffs had the right to show by other means the quantity of ore remaining in the chutes when they were forced to quit work. They had not agreed to do any given amount of work or continue for any stated time. They were to receive pay for the ore mined and placed in the chutes, and could cease work at any time.

The testimony as to the quantity of ore remaining in the chutes is in conflict. Plaintiffs estimated it by arriving at the cubic contents of the ore piles, of which twenty-two cubic feet made one ton. They also estimated the amount somewhat from the day's work of each man and what the previous work had shown was an average day's work per man. Defendants controverted this testimony by evidence tending to show that plaintiffs' estimate was too great. The court, however, accepted the testimony of plaintiffs, and with its conclusions we cannot interfere.

There was evidence that all the plaintiffs were equal partners in the net proceeds, each man to be paid according to the time he worked, less his share of the expenses. A statement was handed in to defendants showing the amount due to each, and, by agreement among the plaintiffs, each was to be paid separately, and he was so paid. There was no demurrer for misjoinder of parties plaintiff. There was evidence to support the finding that defendants recognized all the plaintiffs as working under the contract alleged in the complaint.

The judgment and order are affirmed.

Buckles, J., and McLaughlin, J., concurred.